```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X

KIMBERLY O'KEEFE and DENNIS O'KEEFE,   :
                                              03 Civ. 8750 (WCC)
              Plaintiffs,              :

     - against -                       :       OPINION
                                                AND ORDER
ARBON EQUIPMENT CORPORATION,           :

              Defendant.               :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                               DAVIDSON & COHEN, P.C.
                               **Attorneys for Plaintiffs**
                               265 Sunrise Highway
                               Rockville Centre, NY 11570

LESLEY C. SISKIND, ESQ.

       Of Counsel

                               GALLAGHER GOSSEEN FALLER & CROWLEY
                               Attorneys for Defendant
                               1010 Franklin Avenue, Suite 400
                               Garden City, NY 11530

DAVID H. ARNTSEN, ESQ.
JONATHAN P. PIROG, ESQ.

       Of Counsel

*Copies Mailed to Counsel of Record*

**CONNER, Senior D.J.:**

This is a diversity action brought by plaintiffs, Kimberly O'Keefe ("O'Keefe") and her husband, Dennis O'Keefe, stemming from a work-related accident in which O'Keefe was allegedly struck by an automatic overhead door in a Stew Leonard's grocery store. Plaintiffs bring suit against defendant Arbon Equipment Corp. ("Arbon"), which installed and serviced a number of automatic doors at the store, including the door that allegedly struck O'Keefe. Plaintiffs allege Arbon negligently inspected and serviced the door, and that O'Keefe's injuries resulted from Arbon's negligence. O'Keefe seeks "physical and mental" damages, and her husband seeks damages for loss of "services, comfort and society of his wife."

Presently before the Court is defendant's motion for summary judgment, which, for the reasons stated below, is granted.

## BACKGROUND

On June 6, 2002, O'Keefe was injured during the course of her employment when she allegedly was hit by a high-speed, automatic overhead door. (Am. V. Complt. ¶ 5.) At the time, O'Keefe was a full-time employee of the Stew Leonard's grocery store in Yonkers, New York, tasked with handing out free samples. (O'Keefe Dep. at 9, 13.) In describing the accident, O'Keefe testified: "I went to the door, I pulled the string, and then I woke up on the floor."[1] (*Id.* at 22.) After an unknown period of time, O'Keefe got up, reported the incident to Stew Leonard's security and informed her supervisor. (*Id.* at 38.) Security personnel then transported O'Keefe to Lawrence

---

[1] No one witnessed the accident and no one came to plaintiff's aid. (O'Keefe Dep. at 31.)

Hospital, where she complained of head, neck and back pain; was examined by an emergency room doctor; given an ice pack; and told to return if she felt worse. (*Id.*) O'Keefe went to St. John's Hospital later that evening complaining of increased head and neck pain, as well as nausea and shoulder pain. (*Id.* at 40-41.) The emergency room doctor referred plaintiff to her primary care physician, who ordered a CAT scan and MRI and prescribed physical therapy. (*Id.* at 46, 51.)

Arbon, which sells and services loading dock equipment and high-speed power doors, installed the door—a Protecdor 8000 model—that allegedly struck plaintiff. (Def. Rule 56.1 Stmt. ¶ 2; Bellows Dep. at 5.) In addition, Stew Leonard's had a preventative maintenance contract, known as the "Planned Maintenance Program," with Arbon. The Planned Maintenance Program required Arbon to conduct a single, annual "inspection, lubrication, adjustment and cleaning" of seven automatic doors and eight hydraulic levelers at Stew Leonard's.[2] (Pirog Aff., Ex. I; Bellows Dep. at 11, 12.) In addition, although not part of the contract, Arbon would service the doors if so requested by Stew Leonard's, but at additional expense to the store. (Pirog Aff., Ex. I; Bellows Dep. at 18-20; Botehlo Dep. at 5-6.)

James Botehlo, Stew Leonard's facilities manager, is responsible for the day-to-day maintenance of the store. Botehlo manages a maintenance team of eight people, including several electricians, several carpenters and a machine repairman, among others. (Botehlo Dep. at 5-6.) These in-house repairmen inspected each automatic door on a daily basis. (*Id.* at 18.) These employees would attempt minor repairs of the doors, but Arbon would be called if the in-house repairmen could not fix the doors or the doors required major repairs. (*Id.* at 16, 17.)

---

[2] Deposition testimony indicates that Arbon conducts its inspection and basic servicing every six months, though the Planned Maintenance Program requires only a single such visit annually. (Botehlo Dep. at 9-10.)

The Protecdor 8000 is a track-guided, steel-framed, vinyl door used to control environmental conditions between rooms. (Pirog Aff., Ex. G; Bellows Dep. at 13.) It has several safety features, including a soft, bean-bag-like bottom edge; internally- and externally-mounted photoeyes that automatically stop and raise the door if an object is in the door's path; and magnetic tracks that allow the door to "break away" if impacted, so as to minimize structural damage to the door. (Pirog Aff., Ex. G; Bellows Dep. at 13, 27-28; Botehlo Dep. at 21.) According to Botehlo, only impact from equipment (such as forklifts), and not human bodily contact, has ever knocked these types of doors out of their tracks. (Botehlo Dep. at 26.) An accident report filled out by Stew Leonard's security personnel indicated that they found the door halfway down and in the off position after the accident. (*Id.* at 32.) Inspection by Stew Leonard's maintenance personnel revealed the door was jamming halfway down. (*Id.*) Botehlo testified that he was unaware of any complaints having been made in May or June 2002 regarding the door; he does not keep records on repair requests or repairs performed. (*Id.* at 18, 25.) However, an Arbon service record establishes that Arbon received a service request on May 31, 2002, and serviced the door on June 3, 2002—three days before the accident and roughly one month after it performed scheduled preventative maintenance. (Pirog Aff., Ex. K ¶ 5 & Ex. L; Am. V. Complt. ¶ 4.) There is no evidence that Arbon was called to repair the door or its safety mechanisms after this accident.

Plaintiffs, residents of New York, initiated suit against Arbon in New York Supreme Court by serving Arbon with a summons and verified complaint. (Pirog Aff. ¶ 5 & Ex. A.) Arbon, a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin, removed the

action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.[3] (Def. Rule 56.1 Stmt. ¶ 1; Pirog Aff. ¶ 7.) Defendant then filed an answer in which it denied having manufactured the door. (Pirog Aff. ¶ 8 & Ex. C ¶ 3.) In response, plaintiffs filed an amended verified complaint eliminating their claim for strict products liability; plaintiffs' sole remaining claim is for negligent inspection, maintenance, service and repair of the door. (Pirog Aff. ¶ 9; Am. V. Complt. ¶ 6.) Defendant moves for summary judgment pursuant to FED. R. CIV. P. 56 on the ground that it owes no legal duty of care to O'Keefe, thus defeating O'Keefe's *prima facie* case as a matter of law.

## DISCUSSION

**I.      Summary Judgment Standard**

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). To defeat summary judgment, the nonmovant must

---

[3] This Court has jurisdiction based on diversity, as the parties are completely diverse and the amount in controversy exceeds $75,000.

go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).

## II. Plaintiffs' Failure to Comply With Local Rule 56.1

Pursuant to Local Civil Rule 56.1(a) adopted by the Southern District of New York, a motion for summary judgment requires that the moving party submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Rule 56.1 also requires the nonmoving party to respond to the movant's submission by contesting any or all of the movant's assertions of material fact and adding any additional material facts that the nonmovant believes justify trial. *See* Local Rule 56.1(b). Failure of the nonmoving party to fulfill this requirement permits the court to deem admitted any material fact listed in the movant's Rule 56.1 statement "unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Rule 56.1(c).

"Courts in this Circuit have not hesitated to deem admitted the facts in a movant's Local Civil Rule 56.1 statement that have not been controverted by a Local Civil Rule 56.1 statement from the nonmoving party." *Gadsden v. Jones Lang Lasalle Am. Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("We have affirmed the grant of summary judgment on the basis of uncontested assertions in the moving party's Local Rule

56.1 statement."). The five-page "Affirmation in Opposition" of plaintiff's attorney fails to satisfy the requirements of Local Rule[] 56.1(b). *See AFL-CIO Hosp. & Nursing Home Council Pension Fund ex rel. Boyens v. Manor Oaks Skilled Nursing Facilities, Inc.*, No. 01-CV-99S, 2004 WL 1737189, at *2 (W.D.N.Y. July 29, 2004). "Moreover, an attorney affidavit not made on personal knowledge, as this one is not, is insufficient to defeat a summary judgment motion." *Id.* (collecting cases). "However, '[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1(a) statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 448 (S.D.N.Y. 2005) (quoting *Holtz*, 258 F.3d at 74).

Here, defendant, as the moving party, properly included a Rule 56.1 statement with its motion for summary judgment. Plaintiffs, however, submitted no corresponding Rule 56.1 statement. The only document submitted by plaintiffs was the above-mentioned Affirmation in Opposition, which included one exhibit. Despite plaintiffs' short response, the parties' disagreement concerning Arbon's contractual maintenance and repair obligations is clear. Defendant asserts that "Stew Leonard's did not have a contract with any entity to perform repairs and maintenance of the doors, and as such had their own employees inspect the doors on a daily basis and perform necessary repairs." (Def. Rule 56.1 Stmt. ¶ 3.) Yet, defendant goes on to state that Stew Leonard's contracted with Arbon "to perform routine, preventative maintenance one time per year" (*id.* ¶ 4), which plaintiffs' attorney's affidavit observes is "uncontroverted." (Pls. Affm. Opp. ¶ 9 (citing Bellows Dep. at 8-12).) Defendant reconciles its two seemingly discordant statements by noting that "[o]ther than this once a year, routine maintenance, Arbon was not contractually required to *inspect, repair*

6

*or maintain*" the door. (Def. Rule 56.1 Stmt. ¶ 5 (emphasis added).) Plaintiffs apparently rest their view of Arbon's liability upon Arbon's repair of the door three days prior to the accident, evidenced by an Arbon repair ticket (Pls. Affm. Opp., Ex. A), which plaintiffs' claim creates an issue of fact "as to whether or not [Arbon] knew or should have known that the door that they fixed was in such a state of disrepair that instead of temporarily fixing it, . . . they should have taken this door out of service . . ." (*id.* ¶ 14).

Accordingly, any fact alleged in defendant's Rule 56.1 statement not specifically controverted by properly supported statements in the affirmation of plaintiffs' attorney will be deemed admitted by plaintiffs, unless it is controverted by facts in the record.

### III. Duty of Care

Finding Arbon liable for negligence turns on "whether the defendant has assumed a duty to exercise reasonable care to prevent foreseeable harm to the plaintiff." *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 226, 556 N.E.2d 1093, 557 N.Y.S.2d 286 (1990). To establish a prima facie case of negligence under New York law, a plaintiff must prove: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as the proximate result of that breach. *See Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004) (citing *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 499 N.Y.S.2d 392 (1985)). Generally, "the question of the existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal issue for the court to resolve." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (citing *Waters v. New York City Hous. Auth.*, 69 N.Y.2d 225, 229, 505 N.E.2d 922, 513 N.Y.S.2d 356 (1987)). In a

7

negligence action, "to defeat a motion for summary judgment 'the plaintiff must introduce adequate evidence on each element of negligence sufficient to support a favorable jury verdict [, and] . . . in cases where proof of any essential element falls short the case should go no further.'" *Stanton v. Manhattan E. Suite Hotels*, No. 01 Civ. 2394, 2002 WL 31641127, at *2 (S.D.N.Y. Nov. 22, 2002) (quoting *Basso v. Miller*, 40 N.Y.2d 233, 242, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976)).

Defendant argues it is not liable to plaintiffs for negligence because its contractual obligations did not give rise to liability in favor of a third party. "As a general rule, a contracting party that breaches its contractual obligation does not owe a duty to noncontracting third parties." *Perkins v. Cosmopolitan Care Corp.*, 308 A.D.2d 437, 438, 764 N.Y.S.2d 276 (2d Dep't 2003). According to Chief Judge Cardozo, "imposing liability under such circumstances could render the contracting parties liable in tort to 'an indefinite number of potential beneficiaries.'" *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 139, 773 N.E.2d 485, 746 N.Y.S.2d 120 (2002) (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 168, 159 N.E. 896 (1928)). However, the New York Court of Appeals has identified three exceptions to this general rule: "(1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm'; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties[;] and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Espinal*, 98 N.Y.2d at 140 (internal citations omitted).

### A. Launching a Force or Instrument of Harm

Defendant contends that this first exception is inapplicable because the door functioned

without incident for the three days between Arbon's last service call and the accident. In determining whether this exception applies, "[t]he query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." *H.R. Moch*, 247 N.Y. at 168.

As best can be determined from the Affirmation in Opposition of their attorney, plaintiffs assert that having undertaken to repair the door on June 3, 2002, Arbon "knew or should have known that the door they fixed was in such a state of disrepair that instead of temporarily fixing it . . ., they should have taken this door out of service so as to prevent foreseeable accidents." (Pls. Affm. Opp. ¶ 14.) Plaintiffs argue that Arbon's repair creates an issue of fact regarding the door's operational safety as the repairs may in fact have contributed to the accident. (*Id.* ¶¶ 14-15.) The only evidence plaintiffs cite in support of this contention is an Arbon repair invoice, dated June 3, 2002, that indicates repairs were made to the photo-eye reflector, the curtain breakaway system wiring and certain magnets and relays. (*Id.*, Ex. A.) That invoice also reads: "Door will need a new curtain / bottom magnet[.] As this is only a temporary fix will have salesmen send quote on repairs." (*Id.*)

However, this limited evidence, coupled with plaintiffs' complete reliance on the temporal proximity of the repairs to the accident, does not establish that Arbon launched a force or instrument of harm. Plaintiffs have adduced no evidence that Arbon had actual or constructive knowledge of any defect in or malfunctioning of the door. The invoice does not state the reason for the service call and does not describe the nature of the repairs made (aside from cursory reference) or specifically which item constituted the "temporary fix." Plaintiffs have produced no other evidence regarding problems with the door (which it blames on Stew Leonard's poor record keeping), nor elicited any testimony from Stew Leonard's personnel or Arbon's maintenance staff regarding the repairs. *See*

9

*McKeon v. Oyster Bay*, 292 A.D.2d 574, 575, 739 N.Y.S.2d 739 (2d Dep't 2002) (granting summary judgment "as there was no evidence that the alleged defective condition was in any way connected to [defendant's] work").

Moreover, Arbon's repair of the door three days before the accident establishes no issue of fact regarding the door's potential to malfunction. *See Fetterly v. Golub Corp.*, 300 A.D.2d 1056, 1057, 752 N.Y.S.2d 471 (4th Dep't 2002) (finding no actual or constructive knowledge where "the company that installed and maintained the automatic door had inspected the door the day before the accident and had determined that it was working properly"); *see also O'Connor v. Circuit City Stores, Inc.*, 14 A.D.3d 676, 677, 789 N.Y.S.2d 252 (2d Dep't 2005) (granting summary judgment to company that installed automatic doors, repaired doors only at store's request and performed repairs six months before accident); *Allen v. Thompson Overhead Door Co.*, 3 A.D.3d 462, 464, 771 N.Y.S.2d 521 (2d Dep't 2004) (deciding no liability existed where company made last repair six months prior to accident and "plaintiff did not demonstrate that the malfunction of the garage door resulted from such repairs"). While repairs were made to the photo-eye safety mechanism, plaintiffs' attorney's pronouncement that "the safety feature failed" is insufficient to create an issue of fact. (Pls. Affm. Opp. ¶ 13.) As are plaintiffs' attorney's opinions that there was a "severe problem" with the door. (*Id.* ¶ 15.) Bald conjecture is insufficient to warrant denial of summary judgment. *See Carey*, 923 F.2d at 21; *W. World Ins.*, 922 F.2d at 121. Plaintiffs' failure to provide this Court with any evidence, expert or otherwise, explaining the nature of the malfunction or possible reasons for a malfunction renders it impossible to conclude that Arbon launched a force or instrument of harm.

B. **Detrimental Reliance**

Defendant argues that the detrimental reliance exception does not apply because this action does not present a situation where plaintiff relied upon Arbon. Plaintiffs make no discernible argument relating to this issue. "'[T]ort liability may arise where "performance of contractual obligations has induced detrimental reliance on continued performance" and the defendant's failure to perform those obligations "positively or actively" works an injury upon the plaintiff.'" *Occhino v. Citigroup Inc.*, No. CV-03-5259, 2005 WL 2076588, at *7 (E.D.N.Y. Aug. 26, 2005) (quoting *Espinal*, 98 N.Y.2d at 140)). However, a plaintiff must have knowledge of the contract in order to state a valid claim of detrimental reliance. *See Occhino*, 2005 WL 2076588, *7-8 (citing *Bugiada v. Iko*, 274 A.D.2d 368, 369, 710 N.Y.S.2d 117 (2d Dep't 2000)).

Here, there is no evidence that O'Keefe had any knowledge of the Planned Maintenance Program between Stew Leonard's and Arbon. Therefore, detrimental reliance cannot except plaintiffs' claim from the general rule against extending contractual liability to third parties.

C. **Displacement of Duty**

Defendant asserts that the last exception is also inapplicable because the Planned Maintenance Program does not constitute a comprehensive and exclusive property maintenance plan, such that Arbon is responsible for the door. Plaintiffs counter that defendant's reliance on comprehensive and exclusive property maintenance plans is misplaced because Arbon "took an active role in the repair of this door and as such, created the dangers encountered" by O'Keefe. (Pls. Affm. Opp. ¶ 16.)

By the express terms of the Planned Maintenance Program, Arbon was obligated only to

11

conduct "complete inspection, lubrication, adjustment and cleaning" of the door one time per year. (Pirog Aff., Ex. I.) We cannot say that this contractual undertaking is the type of "comprehensive and exclusive" property maintenance obligation capable of creating a duty of care. The evidence indicates that other than the (bi)annual inspection and basic cleaning, lubrication and adjustments, Arbon serviced the door only when requested to do so by Stew Leonard's facilities staff, and each visit was billed on the basis of parts required and labor expended. Moreover, the uncontroverted evidence establishes that Stew Leonard's own experienced maintenance staff inspected the door each day and performed most maintenance on the door. Therefore, Arbon did not entirely displace Stew Leonard's duty to inspect or maintain the door in safe, operating condition. *See*, *e.g.*, *Edick v. Paul de Lima Co.*, 6 A.D.3d 864, 775 N.Y.S.2d 385 (3d Dep't 2004) (affirming summary judgment for coffee-maker servicer where servicer shared maintenance obligation with another company that contracted to provide 24-hour maintenance and repairs, and servicer visited store only upon request); *id.* ("Unlike the service agreement in *Palka [v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 634 N.E.2d 189, 611 N.Y.S.2d 817 (1994)], where the contractor was to be the sole provider of 'all support services employed in the performance of daily maintenance duties' at the hospital where the plaintiff was injured, defendant here did not assume exclusive control over all safety obligations . . . ."); *Allen*, 771 N.Y.S.2d at 523 (contractor not liable where F.D.N.Y. retained responsibility to inspect and maintain the door); *cf. Massato v. Sears Roebuck & Co.*, 272 A.D.2d 453, 708 N.Y.S.2d 333 (2d Dep't 2000) (liability where company that contracted to periodically maintain and examine escalator and escalator safety devices maintains storage room at store and regularly performs preventative maintenance).

The Court therefore concludes, as a matter of law, that defendant did not breach any duty of care owed to plaintiffs.

## CONCLUSION

For all of the foregoing reasons, the motion for summary judgment of defendant Arbon Equipment Corp. is granted. Judgment to be entered by the Clerk of the Court.

SO ORDERED.

Dated: White Plains, New York
       November 2, 2005

*William C. Conner*
Sr. United States District Judge